IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                  CRIMINAL ACTION NO. 5:07-cr-00049

GAIL MAUZY,

        Defendant.

### AMENDED MEMORANDUM OPINION AND ORDER[1]

On October 9, 2007, the Court held a hearing in this matter to address Defendant's objections to the Presentence Investigation Report (PSR). After hearing argument on Defendant's two objections, the Court ordered the parties to submit supplemental memoranda addressing the objections. Both parties have submitted supplemental memoranda [Dockets 28 and 29]. This opinion addresses Defendant's first objection: whether, under U.S.S.G. § 3B1.3, Defendant abused a position of private trust in connection with her offense. For the reasons stated herein, Defendant's first objection is **SUSTAINED**.

### I. FACTS

The facts relevant to Defendant's crime are not in dispute. On March 8, 2007, Defendant plead guilty to a one count information charging her with mail fraud, 18 U.S.C. § 1341. Prior to Defendant's arrest for this crime, she was a secretary for Mr. C.A. McHale, an attorney in Lewisburg, West Virginia. Mr. McHale's law practice included managing estates of deceased individuals. Defendant worked for Mr. McHale for approximately 25 years, and in that time assumed the roles of officer manager and

---

[1] The original edition of the following opinion was entered under seal on December 4, 2007.

bookkeeper.² In those roles, Defendant was "allowed to control all of the business and estate accounts, along with the mail that came into [the] office[.]" (PSR ¶ 10.) Mr. McHale offered little or no supervision of Defendant's management of the business and estate accounts. In fact, for checks that required his signature, Mr. McHale signed the checks in advance so that Defendant could conduct business activities without obtaining his approval.

From August 2000 through September 2003, Defendant used a scheme to defraud Mr. McHale by stealing monies from the estate accounts. First, Defendant transferred funds from the estate accounts to Mr. McHale's escrow account. Next, Mr. McHale signed "blank checks" for his escrow account and gave them to Defendant under the assumption that they would be used for estate-related purposes. Instead, Defendant issued the checks to herself, and either cashed them or deposited them in her bank account.³ In total, Defendant illegally negotiated $211,395 in checks drawn on the escrow account. Mr. McHale did not review Defendant's work to ensure that his "blank checks" were used for proper purposes.

The monies which Defendant transferred out of various estate accounts were ultimately repaid by Mr. McHale. Thus, Mr. McHale is the victim in this case.

## II. LEGAL STANDARD

In calculating Defendant's Offense Level under the United States Sentencing Guidelines, the PSR recommends a two-level increase for Defendant's abuse of a position of trust. U.S.S.G. § 3B1.3 provides, in relevant part, that "[i]f the defendant abused a position of public or private trust . . . in a

---

² During the final ten years of her employment with Mr. McHale, Defendant was his only employee.

³ Defendant's checks for her accounts were delivered to her through the United States Mail. This act served as the basis for the Government's mail fraud charge.

manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels." The phrase "public or private trust" is defined in Application Note 1 as follows:

> Definition of "Public or Private Trust". "Public or private trust" refers to a position of public or private trust characterized by professional or managerial discretion (*i.e.*, substantial discretionary judgment that is ordinarily given considerable deference). Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature. For this adjustment to apply, the position of public or private trust must have contributed in some significant way to facilitating the commission or concealment of the offense (*e.g.*, by making the detection of the offense or the defendant's responsibility for the offense more difficult). This adjustment, for example, applies in the case of an embezzlement of a client's funds by an attorney serving as a guardian, a bank executive's fraudulent loan scheme, or the criminal sexual abuse of a patient by a physician under the guise of an examination. This adjustment does not apply in the case of an embezzlement or theft by an ordinary bank teller or hotel clerk because such positions are not characterized by the above-described factors.

"Determining what constitutes a position of trust for the purposes of § 3B1.3 is not a simple task," *United States v. Caplinger,* 339 F.3d 226, 236 (4th Cir. 2003), because the "enhancement was not designed to turn on formalistic definitions of job type[.]" *United States v. Gordon,* 61 F.3d 263, 269 (4th Cir. 1995). Rather, district courts must consider the following factors in determining whether the adjustment applies:

> (1) whether the defendant had either special duties or special access to information not available to other employees; (2) the extent of the discretion the defendant possesses; (3) whether the defendant's acts indicate that he is more culpable than others who are in positions similar to his and who engage in criminal acts; and (4) viewing the question of abuse of trust from the victim's perspective.

*United States v. Akinkoye,* 185 F.3d 192, 203 (4th Cir. 1999).

"[F]raud alone cannot justify the § 3B1.3 enhancement." *United States v. Ebersole*, 411 F.3d 517, 536 (4th Cir. 2005). District courts must make a distinction between ordinary fraud and abuse of a position of trust as follows:

> A sentencing court must carefully distinguish between those arms-length commercial relationships where trust is created by the defendant's personality or the victim's credulity and those where a fiduciary or personal trust relationship exists with [the victim], and the defendant takes advantage of the relationship to perpetrate or conceal the offense. Only the latter circumstances justify the enhancement. At bottom, § 3B1.3's critical term - position of public or private trust - is a term of art, appropriating some of the aspects of the legal concept of a trustee or fiduciary. In other words, application of the enhancement requires more than a mere showing that the victim had confidence in the defendant. Something more akin to a fiduciary function is required.

*Akinoye*, 185 F.3d at 237 (internal quotations omitted). In other words, "what distinguishes situations in which § 3B1.3 should apply is 'whether the defendant has broad discretion to act on behalf of the victim and the victim believes the defendant will act in the victim's best interest.'" *United States v. Bollin*, 264 F.3d 391, 416 (4th Cir. 2001). An employee's merely "being subject to lax supervision alone[, however,] does not convert [his] job into a 'position of trust[.]'" *United States v. Helton*, 953 F.3d 867, 870 (4th Cir. 1992).

### III. ANALYSIS

During the hearing on Defendant's objections to the PSR, the parties debated whether Defendant was a secretary or an office manager in Mr. McHale's office. As noted above, job titles alone do not determine whether an employee was in a position of trust. Rather, the Court must apply the *Akinkoye* factors to make this determination. The first and third factors do not appear applicable to this case because Defendant was Mr. McHale's only employee and the record contains no evidence regarding other employees in similar positions to Defendant.

The determinative factors, then, are the extent of the Defendant's discretion in her position, viewing any abuse of discretion from Mr. McHale's perspective. The evidence shows that Defendant was Mr. McHale's assistant, and in that role prepared the necessary paperwork and bookeeping related to Mr. McHale's estate work. In addition to these duties, Defendant was authorized to transfer monies

4

between accounts and to handle blank checks. The record does not indicate that Defendant had any discretion with regard to these latter duties, however, Mr. McHale performed no oversight of Defendant's work.

Attorneys licensed in the State of West Virginia who handle client funds must do so in accordance with W. Va. R. Prof'l Conduct 1.15(a). That rule provides, in pertinent part, that:

> A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account designated as a 'client's trust account' in an institution whose accounts are federally insured and maintained in the state where the lawyer's office is situated, or in a separate account elsewhere with the consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

The Comment to that rule further provides that "[a] lawyer should hold property of others with the care required of a professional fiduciary. . . . Separate trust accounts may be warranted when administering estate monies or acting in similar fiduciary capacities."

With regard to the estates for which Mr. McHale was the responsible attorney, he was a fiduciary and was required, by rule, to keep complete and accurate records. Mr. McHale's ficuciary responsibilities could not be legally delegated. *Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225, 234 (2d Cir. 1977) ("The principle that a lawyer cannot delegate his fiduciary duties to another in an effort to avoid its strictures or to avoid responsibility for the manner in which they are undertaken is settled law."). It appears from the record, however, that Mr. McHale improvidently chose to delegate his fiduciary responsibilities to Defendant. Thus, while Mr. McHale may have put his trust in Defendant to manage the affairs of his law practice, he was not authorized to do so.

Viewing the abuse of discretion from the *victim's perspective*, Defendant did not violate any properly delegated fiduciary trust. This conclusion is supported by U.S.S.G. § 3B1.3, Application Note 1, which notes that the adjustment "applies in the case of an embezzlement of a client's funds by an attorney serving as a guardian." Under that example, it is the attorney who is provided with the requisite discretion to guard his client's monies. Again, this responsibility cannot be delegated.

The Court's conclusion is further supported by *United States v. Helton*, 953 F.3d 867 (4th Cir. 1992). In that case, Ms. Helton was an employee whose job responsibilities included issuing travel reimbursement checks. Ms. Helton had no discretion in that task, but her supervisor never reviewed her work. During an audit, it was discovered that Ms. Helton had embezzled $20,050 from the travelers' fund. The Government argued that Ms. Helton was placed in a position of trust because her supervisor trusted her and did not review her work. After reciting the district court's findings that Ms. Helton's supervisors were "inept," "sloppy," and "derelict in their duty," the *Helton* court held that "[u]nder the government's reasoning, any [employee who handles money] not subject to effective auditing would hold a 'position of trust.' Helton obviously should have been closely supervised, but being subject to lax supervision alone does not convert one's job into a 'position of trust' under section 3B1.3." *Id.* at 870.

In this case, Mr. McHale was not permitted to delegate the discretion to manage his estate accounts. Therefore, as in *Helton*, his failure to properly review Defendant's work, which resulted in the embezzlement of $211,395, is clearly "lax supervision." Mr. McHale's failure to properly supervise Defendant did not place her in a position of trust. Accordingly, Defendant's first objection is **SUSTAINED**.

*IV. CONCLUSION*

The Court **DIRECTS** the Clerk to send a copy of this Amended Memorandum Opinion and Order to the Defendant and counsel, the United States Attorney, and the United States Probation Office and to post this opinion at http://www.wvsd.uscourts.gov.

      ENTER:    January 9, 2008

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE